# EXHIBIT A

FILED: NEW YORK COUNTY CLERK 10/15/2013

NYSCEF DOC. NO. 1

INDEX NO. 159485/2013

RECEIVED NYSCEF: 10/15/2013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------

ASHLEY COOPER,

                              Plaintiff,

       -against-

THE TRUSTEES OF THE COLLEGE OF THE
HOLY CROSS d/b/a COLLEGE OF THE HOLY
CROSS, COLLEGE OF THE HOLY CROSS,
BILL GIBBONS, RICHARD M. REGAN, JR.
and ANN ZELESKY,

                              Defendants.

--------------------------------------------------

Index No.
Date Purchased
Plaintiff(s) designate(s)
NEW YORK
County as the place of trial.

The basis of venue is
Plaintiff's residence

**SUMMONS**
Plaintiff(s)' address:
New York County

To the above named Defendant(s):

   *You are hereby summoned* to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve a notice of appearance on the Plaintiff's Attorney(s) within **twenty** days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING

   PLEASE TAKE NOTICE that the matter captioned above, which has been commenced by filing of the accompanying documents with the County Clerk, is subject to mandatory electronic filing pursuant to Section 202.5-bb of the Uniform Rules for the Trial Courts. This notice is being served as required by Subdivision (b) (3) of that Section.
   The New York State Courts Electronic Filing System ("NYSCEF") is designed for the electronic filing of documents with the County Clerk and the court and for the electronic service of those documents, court documents, and court notices upon counsel and self-represented parties. Counsel and/or parties who do not notify the court of a claimed exemption (see below) as required by Section 202.5-bb(e) must immediately record their representation within the e-filed matter on the Consent page in NYSCEF. Failure to do so may result in an inability to receive electronic notice of document filings.
   Exemptions from mandatory e-filing are limited to: 1) attorneys who certify in good faith that they lack the computer equipment and (along with all employees) the requisite knowledge to comply; and 2) self-represented parties who choose not to participate in e-filing. For additional information about electronic filing, including access to Section 202.5-bb, consult the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center at 646-386-3033 or efile@courts.state.ny.us.

Dated: New York, New York
          October 15, 2013

**LAW OFFICE OF ELIZABETH EILENDER, P.C.**
Attorneys for Plaintiff
225 Broadway, 24th Floor
New York, New York 10007
(212) 227-2174

By: _____
          Elizabeth Eilender
          eeilender@lawjaros.com

Defendant(s) address(es):

THE TRUSTEES OF THE COLLEGE OF THE HOLY CROSS
d/b/a COLLEGE OF THE HOLY CROSS COLLEGE OF THE HOLY CROSS
BILL GIBBONS
RICHARD M. REGAN, JR.
ANN ZELESKY
c/o College of the Holy Cross
One College Street
Worcester, Massachusetts 01610

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------------X

ASHLEY COOPER,                                          Index No.
                                                       Dated Filed:
                        Plaintiff,

    -against-                                          **VERIFIED COMPLAINT**

THE TRUSTEES OF THE COLLEGE OF THE HOLY
CROSS d/b/a COLLEGE OF THE HOLY CROSS,
COLLEGE OF THE HOLY CROSS, BILL GIBBONS,
RICHARD M. REGAN, JR. and ANN ZELESKY,

                        Defendants.

----------------------------------------------------------------------X

Plaintiff, by her attorneys, **THE LAW OFFICE OF ELIZABETH EILENDER, PC,**

complaining of the defendants, upon information and belief, alleges as follows:

### THE PARTIES

1.     At all times hereinafter mentioned, plaintiff Ashley Cooper ("Cooper") is a citizen

of the State of New York.

2.     At all times hereinafter mentioned, from September 2011 through May 2013

plaintiff Cooper was a student enrolled at the College of the Holy Cross and a member of the

women's basketball team.

3.     At all times hereinafter mentioned, defendant THE TRUSTEES OF THE

COLLEGE OF THE HOLYCROSS d/b/a COLLEGE OF THE HOLY CROSS ("The Board of

Trustees") are the individuals who comprise the corporate body constituted to conduct the

business of the College of the Holy Cross, many of whose members are citizens of the State of New York.

4.    At all times hereinafter mentioned, defendant COLLEGE OF THE HOLY CROSS, ("Holy Cross") is a private college located in Worcester, Massachusetts.

5.    At all times hereinafter mentioned, defendant BILL GIBBONS ("Gibbons") is and was the head women's basketball coach for Holy Cross.

6.    At all times hereinafter mentioned, defendant RICHARD M. REGAN, JR. ("Regan") was the athletic director for Holy Cross.

7.    At all times hereinafter mentioned, defendant ANN ZELESKY ("Zelesky") is and was the associate athletic director for Holy Cross responsible for the administration and scheduling of all of the women's programs.

8.    At all times hereinafter mentioned defendant Gibbons was acting as an agent, servant and/or employee of defendant THE TRUSTEES OF THE COLLEGE OF THE HOLY CROSS d/b/a COLLEGE OF THE HOLY CROSS.

9.    At all times hereinafter mentioned defendant Gibbons was acting as an agent, servant and/or employee of defendant HOLY CROSS.

10.    At all times hereinafter mentioned defendant Regan was acting as an agent, servant and/or employee of defendant THE TRUSTEES OF THE COLLEGE OF THE HOLY CROSS d/b/a COLLEGE OF THE HOLY CROSS.

11.    At all times hereinafter mentioned defendant Regan was acting as an agent, servant and/or employee of defendant HOLY CROSS.

2

12.    At all times hereinafter mentioned defendant Zelesky was acting as an agent, servant and/or employee of defendant THE TRUSTEES OF THE COLLEGE OF THE HOLY CROSS d/b/a COLLEGE OF THE HOLY CROSS.

13.    At all times hereinafter mentioned defendant Zelesky was acting as an agent, servant and/or employee of defendant HOLY CROSS.

## JURISDICTION

14.    Plaintiff Cooper is a citizen of the State of New York and resident of the County of New York.

15.    Defendant The Board of Trustees includes the following individual members who, upon information and belief, are citizens of the State of New York: Michael G. Barrett, Thomas H. Carey, Michael E. Daniels, William M. Doran, Jr., Susan F. Feitelberg, Anne M. Fink, Andrew J. O'Brien, Richard H. Patterson, Park B. Smith and Donna M. Winn.

16.    Defendants The Board of Trustees and Holy Cross transact business in the State of New York, including but not limited to activities by and through their numerous alumni clubs throughout the State of New York.

17.    The Holy Cross Leadership Council of New York established in 1997, raises the profile of Holy Cross among business leaders in the New York metropolitan area providing a venue for Holy Cross alumni to network.  It initiated and provides major support for the Holy Cross Summer Internship Program and provides scholarship and financial assistance to deserving students from metropolitan New York.

3

18.     The Holy Cross Alumni Club of New York City a/k/a Holy Cross Club of Metro New York City has offices in New York City and locations in New York City where events are held for social gatherings as well as fundraising.

19.     Holy Cross recruits students and student-athletes from the City and State of New York on a regular basis and boasts on its website that New York is the state with the second highest enrollment.

20.     In the past and in 2013 alone, according to Holy Cross' own web site, admissions representatives from the college will participate in approximately 100 recruiting and student solicitation events in New York.

21.     As a member of the Patriot League conference, Holy Cross engages in athletic competition in the City and State of New York on a regular basis.

22.     Defendants committed tortious acts in New York.

23.     Defendants engage in numerous other activities in New York which subject defendants to jurisdiction here.

## THE UNDERLYING FACTS

24.     In the Fall of 2010, as a senior in high school, plaintiff Cooper was recruited by Holy Cross to play basketball for the Holy Cross women's basketball team ("The Team").

25.     Holy Cross offered plaintiff Cooper a full athletic scholarship to Holy Cross which she accepted and subsequently enrolled in Holy Cross as a freshman commencing in the Fall of 2011.

4

26.    At all times hereinafter mentioned, Defendant Gibbons was the head women's basketball coach for Holy Cross.

27.    Upon information and belief, all of the players on The Team were receiving full athletic scholarships for basketball and thus beholden to the defendants for their college education.

28.    During the period plaintiff Cooper was on The Team until plaintiff Cooper was forced to leave Holy Cross, which was a period of approximately two years, defendant Gibbons was verbally, emotionally and physically abusive to plaintiff Cooper as well as to other players on The Team.

29.    At an initial team meeting in the Fall of 2011, a psychological professional was brought in purportedly to meet with the team to deal with team chemistry. Subsequently it was revealed that the only "team chemistry" issues were the players' distress with defendant Gibbons' outrageous and abusive behavior, of which Holy Cross was aware.

30.    Defendant Gibbons, especially during games, including those in the State of New York, would act in an outrageous manner in his yelling, ranting, screaming and hysterics directed towards the Holy Cross players as well as game referees, which prompted players on opposing teams to remark: "your coach is crazy", among other comments.

31.    Defendant Gibbons physically hit players, including plaintiff Cooper.

32.    Defendant Zelesky was present during many if not all of the games during which defendant Gibbons engaged in this out of control, outrageous and abusive behavior.

33.    Upon information and belief defendant Zelesky did nothing to address defendant Gibbons' outrageous abusive conduct despite having actual knowledge.

34.     On an ongoing and frequent basis, defendant Gibbons engaged in inappropriate aggressive physical contact with plaintiff Cooper and other players during practice sessions and games.

35.     Defendant Gibbons repeatedly and in anger deliberately physically shook plaintiff Cooper and other players by the shoulders.

36.     Defendant Gibbons repeatedly and violently yanked and pulled plaintiff Cooper by her shirt collar and strongly squeezed the back of her neck causing pain while barking instructions in her face at close range.

37.     Defendant Gibbons engaged in verbal abuse of plaintiff Cooper and other players, most of whom played basketball since they were young children.

38.     Plaintiff Cooper and other players were afraid of defendant Gibbons and potential retaliation if they were to complain about defendant Gibbons' conduct.

39.     Upon information and belief, other players made complaints to defendant Zelesky regarding defendant Gibbons' conduct and were retaliated against by the coaching staff for "going over their heads."

40.     As a result of defendant's abuse, plaintiff Cooper and other players suffered a loss of self-esteem and a loss of their love of the game of basketball.

41.     Defendant Gibbons deliberately and in anger physically struck plaintiff Cooper on the back on more than one occasion, including but not limited to, during the Holy Cross game against Brown University in January 2012 wherein plaintiff Cooper experienced pain and sustained a red hand-print mark on her skin.

6

42.   Despite plaintiff's counsel's repeated requests, defendants have thus far refused to turn over the game film for the Brown game set forth above.

43.   Defendant Gibbons struck another female player on the back during a game against Lehigh in March 2013 ("Lehigh incident") in front of hundreds of witnesses, including but not limited to the player's parents, plaintiff Cooper's mother and defendant Zelesky.

44.   Despite plaintiff's counsel's repeated requests, defendants have thus far refused to turn over the game film for the Lehigh game set forth above.

45.   Following the Lehigh incident, the player's father verbally complained to defendant Regan who, upon information and belief, directed Holy Cross administrator William Conley ("Conley") to conduct an investigation into the Lehigh incident.

46.   Conley interviewed plaintiff Cooper in connection with the Lehigh incident but defendant Holy Cross refuses to turn over the results of the investigation including but not limited to notes taken during plaintiff Cooper's own interview with Conley.

47.   Upon information and belief, defendants took no disciplinary action against defendant Gibbons.  Defendant Gibbons remains the head women's basketball coach at Holy Cross to this very day.

48.   Defendants never revealed the results of the purported Lehigh incident investigation to the player's family involved in the incident and in fact never even called the family back, displaying a disturbing lack of common decency.

49.   Defendants The Board of Trustees, Holy Cross, Regan and Zelesky have actual knowledge and have possessed that knowledge for years that defendant Gibbons is verbally, emotionally and physically abusive to the players.

7

50.     When the women's basketball players graduate, exit interviews are conducted by defendant Regan and/or defendant Zelesky.

51.     Upon information and belief, many graduating seniors have complained to the defendants during their exit interviews about defendant Gibbons' behavior, yet nothing was done since Gibbons' behavior has not changed and Gibbons remains as head coach of the Holy Cross women's basketball team.

52.     Defendants The Board of Trustees, Holy Cross, Regan and Zelesky continue until the present time to protect, cover-up and otherwise ignore defendant Gibbons' outrageous conduct to the detriment of all the players past and present.

53.     It is unclear why the Defendants refuse to remove or discipline defendant Gibbons, and why defendant Gibbons' father and son manage the scorer's table and concessions, respectively, during home games.

54.     The morale of past and present players on The Team is so low that Holy Cross cannot even hold an alumni game because the players are so demoralized by the time they leave Holy Cross that they have no desire to return.

55.     As a result of the conduct of defendant Gibbons and the remaining defendants' failure to take any action or to remediate the toxic environment that permeated the Holy Cross women's basketball program for years, plaintiff Cooper had no choice but to transfer to another school thereby giving up her full scholarship at Holy Cross and is now required to expend funds for the balance of her college education.

56.     It is widely known and as promulgated on the NCAA's website that "student-athletes gain skills to succeed on the field, in the classroom and for life and that student athletes

8

as a group graduate at higher rates than their peers and feel better prepared for life". *See,*

www.ncaa.org.

57.     The College of the Holy Cross Student Handbook and Planner 2013-2014 ("The

Student Handbook") clearly states that all students are members of the Holy Cross community

and are thus entitled to certain rights which include:

> The right to be treated as an individual member of the community, which includes the
> right to be free of discrimination based upon age, sex, religion, ethnic or national origin,
> handicap, or status as a veteran, and the right to be free from harassment of any type.
>
> The right of peaceful coexistence, which includes the right to be free from violence, force,
> threats, and abuse, and the right to move about freely. The right to be free of any action
> that unduly interferes with a student's rights and/or learning environment.

*See,* The College of the Holy Cross Student Handbook and Planner 2013-2014.

58.     The Holy Cross Student Handbook promulgates a Code of Student Conduct

which expressly prohibits the following:

> **EMOTIONAL ABUSE:** Issuing harassing, degrading or abusive threats or statements
> that cause emotional injury; and or, causing emotional injury through careless or reckless
> behavior. Emotional abuse also includes willful damage to the reputation or psychological
> well-being of another. This covers all forms of communication including, but not limited
> to, written or electronic media.
>
> **PHYSICAL ABUSE/VIOLENCE:** Physically assaulting any person, including but not
> limited to fighting, relationship violence, and physical harm to one's self. Self-defense may
> only be used to the limited degree necessary for self-protection.

*See,* The College of the Holy Cross Student Handbook and Planner 2013-2014.

59.     In its filings with the IRS as an organization exempt from income tax, defendant

Holy Cross describes its mission as:

> Holy Cross is a private, Jesuit liberal arts college dedicated to the pursuit of excellence in
> teaching, learning, service of faith and promotion of justice.

9

...dedicated to forming a community which supports the intellectual growth of all its members while offering opportunities for spiritual and moral development.

60.     The Code of Conduct for the Patriot League, of which Holy Cross is a member,

prohibits:

**Striking, attempting to strike,** or otherwise physically abusing an official, coach, staff member, **student-athlete,** cheerleader, mascot or other person in attendance at an athletic event. This includes throwing objects at an individual or onto the playing surface.

*See,*   www.patriotleague.org/ot/league_governance/league_governance-index.html.   [emphasis added].

61.     In addressing the issue of verbal, physical and psychological abuse of athletes, The

Women's Sports Foundation issued a position statement in an effort to prevent its occurrence:

1.  The verbal, physical or psychological abuse of athletes subverts the mission of sports organizations and educational institutions to provide leadership and resources for the purpose of improving the physical, mental and emotional well-being of all females through sport and physical activity participation.

2.  Any type of abuse has debilitating consequences both for its victims and for the society as a whole. In the context of athletic programs it lowers the self-esteem and limits the ability of participants to develop their full potential in sports and physical activities. It impairs the future capacity of its victims to experience full athletic participation and to pursue employment and leadership roles in athletics. This, in turn, deprives the society as a whole of the contributions of these individuals and damages a genuine appreciation of participants' athletic achievements and contributions.

3.  Abusive behavior of coaches and/or teammates toward other players undermines the professionalism of organized sport, taints the atmosphere of mutual trust and respect between coach and athlete and between teammates, and hinders the fulfillment of the overall educational mission of athletics.

4.  In some instances, abuse may expose a school to liability.

5.  The Women's Sports Foundation recognizes that this type of abuse occurs in sport as it does in other institutional contexts. In order to effectively deal with cases of abuse in athletics, as well as to prevent future abuse of female athletes, the Foundation encourages officers of sports governance bodies, athletic directors and school

administrators to formulate policy guidelines and procedures that include training, distribution of the policy and subsequent evaluation of its effectiveness.

*See*, www.womenssportsfoundation.org.

62.    The National Association of Basketball Coaches Code of Ethics sets forth, *inter alia*:

Coaches are accountable to the highest standard of honesty and integrity. All practices should be consistent with the rules of the game and the educational purposes of the institution…

Coaches treat all persons with dignity and respect providing a model of fair play and sportsmanship…

Coaches have a primary concern for the health, safety and personal welfare of each athlete. The athlete's education is also held foremost.

*See*, www.nabc.com.

63.    The conduct of the defendants exceeds the misconduct involving former Rutgers men's basketball coach Mike Rice, whose behavior was described by Gov. Chris Christie: "The way these young men were treated by the head coach was completely unacceptable and violates the trust those parents put in Rutgers University."

*See*,www.nytimes.com/2013/04/04/sports/ncaabasketball/rutgers-fires-basketball-coach-after-video-surfaces.html?pagewanted=all&_r=0.

64.    Plaintiff Cooper felt compelled to bring this action at this time not only on her own behalf but also on behalf of all women athletes who are abused by their coaches under the grossly offensive rationale that the abusive behavior is "motivational".

65.    Anecdotal evidence of abuse by male coaches of female athletes playing collegiate sports is beginning to surface as more women are willing to come forward and take the position that being abused is not motivational and has no place in collegiate coaching.

11

66.     Just last Friday, October 11, 2013, Keith Brown, the Georgetown head women's basketball coach resigned amid allegations of verbal abuse of players while defendant Gibbons, who Holy Cross has known for years is verbally, physically and emotionally abusive, inexplicably remains on the job.

67.     At least in the case of Keith Brown, Georgetown's administration had the decency to acknowledge that this type of behavior is unacceptable issuing a statement following Brown's resignation: "We expect the highest standards of behavior and professionalism from all members of our university...Actions inconsistent with our values have no place in our community."

See, http://articles.washingtonpost.com/2013-10-10/sports/42892874_1_hoyas-basketball-coach-athletic-director-lee-reed

68.     This is directly contrary to Holy Cross who is seeking to cover-up what has occurred.

### AS AND FOR A FIRST CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF ASHLEY COOPER
### AS AGAINST DEFENDANT BILL GIBBONS

69.     Plaintiff hereby repeats, reiterates and realleges each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

70.     Defendant intentionally struck plaintiff Cooper on more than one occasion causing pain and humiliation; violently and with anger physically shook plaintiff by the shoulders; yanked plaintiff by the shirt collar and squeezed her neck in anger; yelled and screamed at plaintiff embarrassing and humiliating her repeatedly as set forth herein and otherwise abused plaintiff which constitutes bullying.

71.    Defendant's actions constitute the worst type of bullying because not only is defendant Gibbons her coach and supervisor, but also he is someone she is supposed to respect and instead plaintiff Cooper was in fear of physical pain, suffered emotional abuse and fear of retaliation at the hands of defendant Gibbons.

72.    As a result of defendant's conduct, plaintiff has been damaged in that she was forced to leave Holy Cross and enroll in another college to escape defendant Gibbons' abuse; give up her full scholarship; incurred costs for college tuition and room and board; suffered mental anguish and distress; emotional distress; self-esteem and love of basketball has been affected; unable to continue to mentor and coach the young players she met in the Holy Cross sponsored summer basketball camps; will not graduate with her Holy Cross classmates and plaintiff has been otherwise damaged.

73.    By reason of the foregoing, defendants are jointly and severally liable pursuant to the exceptions set forth in the CPLR.

74.    By reason of the totally outrageous conduct of the defendant, plaintiff is entitled to recover punitive damages as well as actual damages, costs and attorneys' fees.

## AS AND FOR A SECOND CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF ASHLEY COOPER
AS AGAINST DEFENDANTS THE TRUSTEES OF THE COLLEGE OF THE HOLY CROSS d/b/a COLLEGE OF THE HOLY CROSS, COLLEGE OF THE HOLY CROSS, RICHARD M. REGAN, JR. and ANN ZELESKY

75.    Plaintiff hereby repeats, reiterates and realleges each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

76.    The defendants were reckless, careless and negligent in failing to properly supervise defendant Gibbons; in failing to prevent Gibbons' abusive and outrageous behavior as set forth herein; in failing to take remedial measures to protect plaintiff Cooper and other Holy Cross women's basketball players from defendant Gibbon's abuse; in violating and in failing to recognize that defendant Gibbons' behavior violated the rules, regulations, policies, procedures and guidelines mandated by The Patriot League, The National Association of Basketball Coaches Code of Ethics and Holy Cross' own internal Mission Statement as reflected on the school's tax exempt income tax return filed with the IRS and the College of the Holy Cross' Student Handbook and Code of Conduct; in permitting defendant Gibbons to strike and otherwise physically intimidate and verbally and emotionally abuse plaintiff as well as other players; in seeking to cover up what had occurred; in refusing to turn over game films which reveal defendant Gibbons' conduct; in perpetuating a culture of denial and feigned ignorance in order to protect defendant Gibbons at the expense of plaintiff and the other players on The Team; in failing to properly and adequately train defendant Gibbons; in failing to reprimand defendant Gibbons; in failing to follow Holy Cross' own policies, procedures and guidelines; in failing to take steps and/or implement processes which would have enabled defendants to prevent, discover and/or stop Gibbons' conduct; in failing to exercise the degree of care owed to the plaintiff existing then and there under the circumstances as required; in failing to see what there was to be seen; in failing to act in a careful and prudent manner as any reasonable person would have acted in the same or similar circumstances and otherwise took no action whatsoever to stop defendant Gibbons' conduct and defendants were otherwise negligent.

14

77.     As a result of defendants' conduct and lack thereof, plaintiff has been damaged in that she was forced to leave Holy Cross and enroll in another college to escape defendant Gibbons' abuse; give up her full scholarship; incurred costs for college tuition and room and board; suffered mental anguish and distress; emotional distress; self-esteem and love of basketball has been affected; unable to continue to mentor and coach the young players she met in the Holy Cross sponsored summer basketball camps; will not graduate with her Holy Cross classmates and plaintiff has been otherwise damaged.

78.     By reason of the foregoing, defendants are jointly and severally liable pursuant to the exceptions set forth in the CPLR.

79.     By reason of the totally outrageous conduct of the defendants, plaintiff is entitled to recover punitive damages as well as actual damages, costs and attorneys' fees.

### AS AND FOR A THIRD CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF ASHLEY COOPER
### AS AGAINST DEFENDANT BILL GIBBONS

80.     Plaintiff hereby repeats, reiterates and realleges each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

81.     Defendant intentionally struck plaintiff Cooper on more than one occasion causing pain and humiliation; violently physically shook plaintiff by the shoulders; yanked plaintiff by the shirt collar and squeezed her neck in anger; yelled and screamed at plaintiff embarrassing and humiliating her repeatedly as set forth herein and otherwise abused plaintiff.

82.     Defendant's actions constitute an assault and battery of plaintiff Cooper who was in fear of physical pain and suffered emotional abuse at the hands of defendant Gibbons.

83.    As a result of defendant Gibbons' conduct, plaintiff was damaged as aforesaid.

84.    By reason of the foregoing, defendants are jointly and severally liable pursuant to the exceptions set forth in the CPLR.

85.    By reason of the totally outrageous conduct of the defendant, plaintiff is entitled to recover punitive damages as well as actual damages, costs and attorneys' fees.

AS AND FOR A FOURTH CAUSE OF ACTION<br>
ON BEHALF OF PLAINTIFF ASHLEY COOPER<br>
AS AGAINST DEFENDANTS THE TRUSTEES OF THE COLLEGE OF THE HOLY<br>
CROSS d/b/a COLLEGE OF THE HOLY CROSS, COLLEGE OF THE HOLY CROSS,<br>
RICHARD M. REGAN, JR. and ANN ZELESKY

86.    Plaintiff hereby repeats, reiterates and realleges each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

87.    Defendants aided and abetted defendant Gibbons' conduct in failing to properly supervise defendant Gibbons; in failing to prevent Gibbons' abusive and outrageous behavior as set forth herein; in failing to take remedial measures to protect plaintiff Cooper and other Holy Cross women's basketball players from defendant Gibbon's abuse; in violating and in failing to recognize that defendant Gibbons' behavior violated the rules, regulations, policies, procedures and guidelines mandated by The Patriot League, The National Association of Basketball Coaches Code of Ethics and Holy Cross' own internal Mission Statement as reflected on the school's tax exempt income tax return filed with the IRS and the College of the Holy Cross' Student Handbook and Code of Conduct; in permitting defendant Gibbons to strike and otherwise physically intimidate and verbally and emotionally abuse plaintiff and other players; in seeking to cover up what had occurred; in refusing to turn over game films which reveal defendant Gibbons'

16

conduct; in perpetuating a culture of denial and feigned ignorance in order to protect defendant Gibbons at the expense of plaintiff as well as other players on The Team; in failing to adequately train defendant Gibbons; in failing to reprimand defendant Gibbons; in failing to follow Holy Cross' own policies, procedures and guidelines; in failing to take steps and/or implement processes which would have enabled defendants to prevent, discover and/or stop Gibbons' conduct; in failing to exercise the degree of care owed to the plaintiff existing then and there under the circumstances as required; in failing to see what there was to be seen; in failing to act in a careful and prudent manner as any reasonable person would have acted in the same or similar circumstances and otherwise took no action whatsoever to stop defendant Gibbons' conduct.

88.      By reason of the foregoing, defendants are jointly and severally liable pursuant to the exceptions set forth in the CPLR.

89.      By reason of the totally outrageous conduct of the defendants, plaintiff is entitled to recover punitive damages as well as actual damages, costs and attorneys' fees.

### AS AND FOR A FIFTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF ASHLEY COOPER
### AS AGAINST DEFENDANTS THE TRUSTEES OF THE COLLEGE OF THE HOLY
### CROSS d/b/a COLLEGE OF THE HOLY CROSS and
### COLLEGE OF THE HOLY CROSS

90.      Plaintiff hereby repeats, reiterates and realleges each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

91.      Defendant Gibbons is an employee, servant, representative and/or agent of the defendants.

92.     Defendant Gibbons is the head women's basketball coach for Holy Cross.

93.     At the time of defendant Gibbons' abusive conduct he was acting in the course of his employment by defendants the Board of Trustees and Holy Cross.

94.     Defendants are vicariously liable for the actions of defendant Gibbons as set forth herein.

95.     As a result of defendant Gibbons' actions, plaintiff has been damaged as aforesaid.

96.     By reason of the foregoing, defendants are jointly and severally liable pursuant to the exceptions set forth in the CPLR.

97.     By reason of the totally outrageous conduct of the defendants, plaintiff is entitled to recover punitive damages as well as actual damages, costs and attorneys' fees.

### AS AND FOR A SIXTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF ASHLEY COOPER
### AS AGAINST DEFENDANT GIBBONS

98.     Plaintiff hereby repeats, reiterates and realleges each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

99.     During the academic years 2011-2013 defendant Gibbons engaged in physical, emotional and verbal abuse against plaintiff Cooper and other players as set forth herein and had a duty to refrain from acting with extreme and outrageous conduct towards plaintiff Cooper, a student-athlete attending Holy Cross.

100.    While serving as the women's basketball coach, defendant Gibbons, despite the aforementioned duty, engaged in extreme and outrageous physical, emotional and verbal abuse as set forth herein.

101.   Defendant Gibbons intended his conduct to intentionally inflict severe emotional distress on plaintiff Cooper or knew there was a high probability that his conduct would cause plaintiff Cooper severe emotional distress.

102.   As a direct and proximate result of defendant Gibbons' extreme and outrageous conduct, plaintiff Cooper has suffered severe emotional distress.

103.   By reason of the foregoing, defendants are jointly and severally liable pursuant to the exceptions set forth in the CPLR.

104.   By reason of the totally outrageous conduct of the defendant, plaintiff is entitled to recover punitive damages as well as actual damages, costs and attorneys' fees.

### AS AND FOR A SEVENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF ASHLEY COOPER AS AGAINST DEFENDANT GIBBONS

105.   Plaintiff hereby repeats, reiterates and realleges each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

106.   During the academic years 2011-2013 defendant Gibbons engaged in physical, emotional and verbal abuse against plaintiff Cooper and other players as set forth herein and had a duty to refrain from acting with extreme and outrageous conduct towards plaintiff Cooper, a student-athlete attending Holy Cross.

107.   While serving as the women's basketball coach, defendant Gibbons, despite the aforementioned duty, engaged in physical, emotional and verbal abuse as set forth herein.

19

108.   Defendant Gibbons negligently inflicted severe emotional distress on plaintiff Cooper or knew there was a high probability that his conduct would cause plaintiff Cooper severe emotional distress.

109.   As a direct and proximate result of defendant Gibbons' conduct, plaintiff Cooper has suffered severe emotional distress as well as injuries set forth herein.

110.   By reason of the foregoing, defendants are jointly and severally liable pursuant to the exceptions set forth in the CPLR.

111.   By reason of the totally outrageous conduct of the defendant, plaintiff is entitled to recover punitive damages as well as actual damages, costs and attorneys' fees.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF ASHLEY COOPER
### AS AGAINST ALL DEFENDANTS

112.   Plaintiff hereby repeats, reiterates and realleges each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

113.   The conduct of defendant Gibbons by physically, emotionally and verbally abusing plaintiff Cooper and other players constituted a hostile educational environment.

114.   This type of conduct violates New York Executive Law §296 which prohibits harassment of any student by reason of her sex.

115.   By reason of the foregoing, plaintiff Cooper has been deprived of an opportunity to receive the full benefits of her athletic scholarship and continue to attend Holy Cross solely due to the conduct of defendants.

20

116.    Defendants are vicariously liable for defendant Gibbons' violation of New York Executive Law §296.

117.    As a result of defendant Gibbons' actions, plaintiff has been damaged as aforesaid.

118.    By reason of the foregoing, defendants are jointly and severally liable pursuant to the exceptions set forth in the CPLR.

119.    By reason of the totally outrageous conduct of the defendants, plaintiff is entitled to recover punitive damages as well as actual damages, costs and attorneys' fees.

WHEREFORE, plaintiff demands judgment against the defendants, to recover for all of her damages, all together with the costs and disbursements of this action, and attorneys' fees.

**THE LAW OFFICE OF ELIZABETH EILENDER, PC,**
Attorneys for Plaintiff Ashley Cooper
225 Broadway, 24th Floor
New York, New York 10007
(212) 227-2780

By: _____
        Elizabeth Eilender

21

VERIFICATION

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK  )

ASHLEY COOPER, being duly sworn, deposes and says:

That she is the plaintiff in the within action, that she has read the foregoing:

Complaint

and knows the contents thereof; that the same is true to her own knowledge, except as to those matters therein stated to be alleged upon information and belief, and that as to those matters, she believes them to be true.

Ashley Cooper

Sworn to before me this
15th Day of October 2013

Notary Public

ELIZABETH EILENDER
Notary Public, State of New York
No. 02EI6069152
Qualified in New York County
Commission Expires Jan. 22, 2014

Index No.
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ASHLEY COOPER,

Plaintiff,

  -against-

THE TRUSTEES OF THE COLLEGE OF THE
HOLY CROSS d/b/a COLLEGE OF THE HOLY
CROSS, COLLEGE OF THE HOLY CROSS,
BILL GIBBONS, RICHARD M. REGAN, JR.
and ANN ZELESKY,

Defendants.

Summons & Verified Complaint

**Law Office of Elizabeth Eilender, P.C.**
**225 Broadway, 24th Floor**
**New York, New York 10007**
**(212) 227-2174**
