UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ASHLEY COOPER,

               Plaintiff,

   -against-

THE TRUSTEES OF THE COLLEGE OF THE
HOLY CROSS d/b/a COLLEGE OF THE HOLY
CROSS, COLLEGE OF THE HOLY CROSS, BILL
GIBBONS, RICHARD M. REGAN, JR. AND ANN
ZELESKY,

               Defendants.

Civil Action No. 13-CV-8064 (KPF) (JCF)

**ECF CASE**

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO REMAND

VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, NY 10020
(212) 307-5500 (tel.)
(212) 307-5598 (fax)

*Counsel for Defendants*

February 14, 2014

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ........................................................................................................3

FACTS SUPPORTING SUBJECT-MATTER JURISDICTION....................................4

ARGUMENT ............................................................................................................5

I.     PLAINTIFF'S MOTION TO REMAND SHOULD BE DENIED BECAUSE
       THERE IS COMPLETE DIVERSITY OF CITIZENSHIP BETWEEN
       PLAINTIFF AND DEFENDANTS.....................................................................6

       A.     Holy Cross Is a Massachusetts Corporation and Thus a Citizen of
              Massachusetts........................................................................................6

       B.     Plaintiff's Motion to Remand Should be Denied Because Holy
              Cross's Individual Trustees are not Parties to the Action ....................10

II.    AMENDMENT OF THE COMPLAINT WOULD BE FUTILE......................13

       A.     Joinder Should be Denied under 28 U.S.C. § 1447(e) ..........................14

       B.     The Proposed Amendment Could Not Withstand a Motion to
              Dismiss................................................................................................16

III.   PLAINTIFF'S REQUEST FOR FEES IS BASELESS....................................21

IV.    THE COURT SHOULD AWARD FEES TO DEFENDANTS .........................22

CONCLUSION.......................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*60 E. 80th St. Equities, Inc. v. Sapir (In re 60 E. 80th St. Equities, Inc.)*, 218 F.3d 109 (2d Cir. 2000)................................................................................................23

*Anderson v. Romano*, No. 08 Civ. 00559 (JSR), 2010 WL 4860659 (S.D.N.Y. Nov. 29, 2010)..............................................................................................13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).............................................................12, 17, 18

*Bauer v. Singh*, No. 3:09-CV-194, 2010 WL 5088126 (S.D. Ohio Dec. 7, 2010)..................11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)............................................12, 16, 18

*Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990)....................................................9

*Carrasco v. C.H. Robinson Worldwide, Inc.*, No. 1:13-cv-1438-LJO-SAB, 2013 WL 6198944 (E.D. Cal. Nov. 27, 2013)...............................................................16

*Clayton v. Trustees of Princeton Univ.*, 608 F. Supp. 413 (D.N.J. 1985)..........................8

*Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22 (2d Cir. 1988)..................................5

*Deutchman v. Express Scripts, Inc.*, No. 07-CV-3539 (DLI) (RER), 2008 WL 3538593 (E.D.N.Y. Aug. 11, 2008)...............................................................15, 16

*DiscoveryLogix, LLC v. Haystac, LLC*, 13 Civ. 4025 (PKC), 2013 WL 4806939 (S.D.N.Y. Sept. 9, 2013)............................................................................21

*E.E.O.C. v. Int'l Ass'n of Bridge, Structural and Ornamental Ironworkers, Local 580*, 139 F. Supp. 2d 512 (S.D.N.Y. 2001).......................................................11

*Edwards v. Erie Coach Lines Co.*, 17 N.Y.3d 306 (2011)..........................................19

*Eisemann v. Greene*, 204 F.3d 393 (2d Cir. 2000).................................................23

*Ellis v. Chao*, 336 F.3d 114 (2d Cir. 2003).....................................................13

*Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325 (2d Cir. 2005)...............17

*Galeotti v. Cianbo Corp.*, No. 5:12-cv-00900 (MAD) (TWD), 2013 WL 3207312 (N.D.N.Y. June 24, 2013)............................................................................19

*Giardi v. Dunning*, 563 F. Supp. 2d 305 (D. Mass. 2008).........................................20

*Gilbert v. Seton Hall Univ.*, 332 F.3d 105 (2d Cir. 2003)....................................18, 19

## TABLE OF AUTHORITIES
### (Cont'd)

<b><u>Page(s)</u></b>

*Gollomp v. Spitzer*, 568 F.3d 355 (2d Cir. 2009) .......................................................................... 23

*Hosein v. CDL W. 45th St., LLC*, No. 12 Civ. 06903 (LGS), 2013 WL 4780051
(S.D.N.Y. June 12, 2013) ...................................................................................... 16

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 1:00-1898
(SAS), 2006 WL 1004725 (S.D.N.Y. Apr. 17, 2006) ............................................. 22

*Kentucky v. Graham*, 473 U.S. 159 (1985) .......................................................................... 12

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) ...................................................... 17

*Lamensdorf v. New York Univ.*, No. 10 Civ. 3462 (JSR), 2010 WL 4967824
(S.D.N.Y. Nov. 30, 2010) ..................................................................................... 18

*Maldonado v. Episcopal Social Servs. Personnel Director*, No. 00 CIV. 4701
(VM), 2000 WL 1789369 (S.D.N.Y. Dec. 6, 2000) ............................................... 12

*Marathon Projects Ltd. v. Creative Designs Int'l, Ltd.*, No. 10 CV 2396 (RPP),
2011 WL 1002424 (S.D.N.Y. Mar. 16, 2011) ....................................................... 23

*Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005) .......................................................... 21

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 Civ. 2923 (CSH),
1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) ........................................................... 12

*Mills 2001 LLC v. Synovus Bank*, 921 F. Supp. 2d 219 (S.D.N.Y. 2013) ..................................... 9

*Nationwide Mut. Ins. Co. v. Kaufman*, 896 F. Supp. 104 (E.D.N.Y. 1995) ................................ 11

*Nazario v. Deere & Co.*, 295 F. Supp. 2d 360 (S.D.N.Y. 2003) ......................................... 14, 15

*Neumeier v. Kuehner*, 31 N.Y.2d 121 (1972) ...................................................................... 18

*Norcast S.àr.l. v. Castle Harlan, Inc.*, 12 Civ. 4973 (PAC), 2014 WL 43492
(S.D.N.Y. Jan. 6, 2014) ......................................................................................... 22

*Ocasio v. Riverbay Corp.*, No. 06 Civ. 6455 (PAC)(KNF), 2007 WL 1771770
(S.D.N.Y. June 19, 2007) ................................................................................. 12, 13

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987) ...................................... 13

*Oneida Indian Nation of N.Y. v. City of Sherrill, N.Y.*, 337 F.3d 139 (2d Cir. 2003)
*rev'd on other grounds sub nom. City of Sherrill, N.Y. v. Oneida Indian Nation
of N.Y.*, 544 U.S. 197 (2005).................................................................................. 13

*Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459 (2d Cir. 1998) ...................................... 15, 20

-iii-

# TABLE OF AUTHORITIES
### (Cont'd)

**Page(s)**

*Parson v. Home Depot USA, Inc.*, CIV. A. No. 13-4817, 2013 WL 6587316
(D.N.J. Dec. 13, 2013) ............................................................................................ 16

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99 Civ. 10175 (JSM), 2001 WL
1154669 (S.D.N.Y. Oct. 1, 2001) *aff'd as modified*, 317 F.3d 209 (2d Cir.
2003) ........................................................................................................................ 24

*Prisco v. State of N.Y.*, 804 F. Supp. 518 (S.D.N.Y. 1992) ........................................... 11

*Reichmann v. Neumann*, 553 F. Supp. 2d 307 (S.D.N.Y. 2008) .................................... 23

*Revell v. Lidov*, No. 3:00-CV-1268-R, 2001 WL 285253 (N.D. Tex. Mar. 20,
2001) .......................................................................................................................... 8

*Robb Evans & Assocs. LLC v. Sun Am. Life Ins.*, No. 10 Civ. 5999 (GBD), 2012
WL 488257 (S.D.N.Y. Feb. 14, 2012) ...................................................................... 8

*Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189 (1985) ............................................ 18, 19

*Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008) ............................. 11

*Sierra Club v. U.S. Army Corps. of Eng'rs*, 776 F.2d 383 (2d Cir. 1985) ..................... 22

*Speter v. Berkeley Coll.*, No. 03 Civ. 1143 (BSJ) (MDF), 2003 WL 22111818
(S.D.N.Y. Apr. 15, 2003) ............................................................................................ 5

*Spithogianis v. Haj-Darwish*, No. 07 Civ. 4609 (PAC) (JCF), 2008 WL 82188
(S.D.N.Y. Jan. 7, 2008) ............................................................................................. 13

*Thales Alenia Space France v. Thermo Funding Co., LLC*, No. 13 Civ. 712
(SAS), 2013 WL 5996148 (S.D.N.Y. Nov. 12, 2013) ............................................... 9

*Tomlinson v. Trustees of the Univ. of Pa.*, 266 F.2d 569 (3d Cir. 1959) ....................... 8

*Trustees of Boston Univ. v. Ligand Pharm., Inc.*, No. Civ.A.02-1312 (SLR), 2003
WL 22501588 (D. Del. Nov. 3, 2003) ....................................................................... 8

*Trustees of Dartmouth Coll. v. Woodward*, 17 U.S. 518 (1819) ............................... 7, 8

*Vera v. Saks & Co.*, 335 F.3d 109 (2d Cir. 2003) .......................................................... 5

*Weishaupt v. Boston Coll. and Trustees of Boston Coll.*, No. 1:11-cv-1122, 2012
WL 1439030 (M.D.N.C. Apr. 24, 2012) .................................................................... 8

## Statutes

28 U.S.C. § 1332 ................................................................................................... passim

# TABLE OF AUTHORITIES
## (Cont'd)

**Page(s)**

28 U.S.C. § 1447(c) ............................................................................... 14, 21, 22

28 U.S.C. § 1447(e) ...................................................................................... passim

28 U.S.C. § 1927 ........................................................................................... 22, 24

MASS. GEN. LAWS, ch. 231, § 85K (2012) ....................................................... 18, 20

N.Y. NOT-FOR-PROFIT CORP. LAW § 720-a (2013) ................................................ 18

## Other Authorities

FED. R. CIV. P. 10(a) .......................................................................................... 10

FED. R. CIV. P. 11 ......................................................................................... 2, 20

FED. R. CIV. P. 12(B)(6) ......................................................................... 2, 13, 16, 17

FED. R. CIV. P. 12(h)(3) ..................................................................................... 14

FED. R. CIV. P. 15 ......................................................................................... 2, 20

FED. R. CIV. P. 20 ......................................................................................... 2, 20

FED. R. CIV. P. 4(m) ....................................................................................... 2, 13

*Individual Rules of Practice in Civil Cases*, Hon. Katherine Polk Failla, U.S.D.J.,
    Rule 6(d) (Revised Nov. 1, 2013) .............................................................. 7

S.D.N.Y. Local Civil Rule 81.1 .......................................................................... 7

## Treatises

14B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND
    PROCEDURE § 3723 (4th ed. 2010) .............................................................. 5

5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND
    PROCEDURE § 1321 (3d ed. 2004) .............................................................. 11

Defendants the Trustees of the College of the Holy Cross d/b/a College of the Holy Cross (the "College" or "Holy Cross"), Bill Gibbons, Richard M. Regan, Jr. and Ann Zelesky (collectively, "Defendants") respectfully submit this memorandum of points and authorities, and the accompanying Declaration of Vincent F. O'Rourke, Jr., in opposition to Plaintiff's Motion to Remand filed January 16, 2014 (the "Motion to Remand").

## PRELIMINARY STATEMENT

Jurisdictional pleadings are not like horseshoes or hand grenades—coming close does not count. Plaintiff's brief in support of her motion to remand ("Plaintiff's Brief" or "Pl.'s Br.") attempts to dodge this well-embedded legal principle by ignoring the jurisdictional evidence before this Court and her own pleadings.

For example, the very first arguments in Plaintiff's Brief are that Holy Cross is a trust and that trusts are close enough to limited liability companies for the Court to analyze Holy Cross as if it were an LLC. Pl.'s Br. at 5-6. Plaintiff is wrong on both counts. To begin, Holy Cross is—and has been for 150 years—a Massachusetts corporation incorporated under the name "the Trustees of the College of the Holy Cross." Its corporate name does not create a trust (a fact courts have recognized for nearly a century) and it does not create an LLC. As the undisputed evidence before the Court shows, the Trustees of the College of the Holy Cross is a Massachusetts corporation with its principal place of business in Massachusetts, and it is therefore a Massachusetts citizen for purposes of 28 U.S.C. § 1332.

Plaintiff's fallback position appears to be that, even if she did not sue any trustees, she "plainly intend[ed] to sue *all* members of the board of trustees." *Id.* at 6 (emphasis added). The undisputed record flatly contradicts this assertion as well. As a threshold matter, the Complaint does not so much as *identify* any trustees other than the select few that she alleges, solely upon

"information and belief," have New York citizenship for jurisdictional purposes.  *See* Compl. ¶ 15.  Indeed, none of the indicia of intent—the caption, the Complaint itself and actual service of process—support Plaintiff's post-filing epiphany: the caption does not mention any individual trustee; the pleadings selectively identify only a small handful of them; and, critically, Plaintiff never attempted to serve any of them with process and the time for doing so has expired.  *See* FED. R. CIV. P. 4(m).

Plaintiff's tertiary position takes the form of an impromptu request to amend the Complaint merely "to name all the trustees individually."  Pl.'s Br. at 6.  The Court should deny that request because Plaintiff cannot show that any of the factors applicable under 28 U.S.C. § 1447(e) weigh in favor of post-removal joinder of diversity-destroying parties, and because such superficial amendment would be futile.  It is axiomatic that a plaintiff cannot deprive a federal court of its diversity jurisdiction simply by joining, after removal, parties with no real connection to the alleged wrongdoing.  Here, Plaintiff leaves no doubt that her sole motivation is to defeat this Court's subject-matter jurisdiction, and joinder should be denied on this ground alone.

More practically, simply identifying the individual trustees by name in an amended pleading would be an exercise in futility.  There is nothing in the record before the Court or in the existing Complaint to suggest that Plaintiff could assert fact-based allegations against those individuals sufficient to survive a Rule 12(b)(6) motion.  Nor has Plaintiff ever acknowledged the reality that the individual trustees are shielded from liability under Massachusetts statutory law for any alleged acts of negligent or even grossly negligent supervision.  The Complaint, and Plaintiff's as yet unproposed cosmetic amendments, confirm that she simply cannot—within the strictures of Federal Rules 11, 15 and 20—file a pleading that asserts fact-based claims of

2

wanton or willful misconduct (the sole exception to Massachusetts's statutory protections) on the part of the individual trustees.

Finally, Plaintiff makes an untenable request for costs and attorney fees. This action was properly removed to this Court, and the instant motion is entirely meritless. Indeed, when a plaintiff in bad faith files a motion devoid of legal or factual basis, courts may award fees to the defendants who are forced to oppose them. Such is the case here.

For all of these reasons, detailed below, Plaintiff's motion to remand should be denied.

## BACKGROUND

This case centers on allegations that the head coach of the Holy Cross women's basketball team (Defendant Bill Gibbons) physically and verbally abused players, including Plaintiff Cooper, during team practices and games. *See, e.g.*, Compl. ¶ 28. The Complaint alleges, in vague and conclusory terms, that Cooper suffered emotional harm as a result, including assertions that "Cooper and other players suffered a loss of self-esteem and a loss of their love of the game of basketball." *Id.* ¶ 40. The Complaint's only specific allegation of conduct directed at Plaintiff is found in Paragraph 41, which alleges that, sometime in January 2012, Defendant Gibbons "physically struck" Plaintiff, leaving a "hand-print mark on her skin." *Id.* ¶ 41. All of the other Defendants appear to have been sued for "failing to prevent Gibbons' abusive and outrageous behavior," and for "failing to see what there was to be seen." *Id.* ¶ 76.

Plaintiff filed her Complaint in the Supreme Court of the State of New York on October 15, 2013. ECF Dkt. No. 1. Defendants timely removed the action to this Court on November 13, 2013. *See id.* Subsequently, Plaintiff claimed that removal was improper. For instance, in a November 18, 2013 letter to the Court, Plaintiff claimed that "complete diversity does not exist . . . [because] [s]everal of the individuals who are among The Trustees of the College of the Holy

3

Cross, are likewise, citizens of New York." *See* Nov. 18, 2013 Ltr. from E. Eilender (ECF Dkt. No. 10). Plaintiff reiterated that claim in a November 27, 2013 letter, which requested that Defendants stipulate to remand. That letter relied on a recent decision concerning the citizenship of a traditional trust. Finally, at an initial pre-trial conference before this Court, Plaintiff's counsel again claimed that removal was inappropriate, and was granted permission to file this motion.

## FACTS SUPPORTING SUBJECT-MATTER JURISDICTION

Removal to this Court was proper because, at all times, there has been complete diversity among the parties, and because the matter in controversy exceeds $75,000, exclusive of interest and costs. As to complete diversity, defendant the Trustees of the College of the Holy Cross is a Massachusetts corporation with its principal place of business in Worcester, Massachusetts. O'Rourke Removal Decl. ¶ 2; Not. of Rem. at 1 n.1. Holy Cross was first incorporated in March 1865 under the name "the Trustees of the College of the Holy Cross." O'Rourke Remand Decl. ¶ 3. Holy Cross's Articles of Organization specifically indicate that the then-trustees "hereby constituted a body corporate by the name of the Trustees of the College of the Holy Cross . . . and shall be and remain a body corporate of that name forever." *Id.* ¶ 4. Those Articles further provide that the corporation "may sue or be sued . . . by the name of the Trustees of the College of the Holy Cross." *Id.* Plaintiff's Complaint contains one sentence out of 119 paragraphs alleging, solely "upon information and belief," that ten individual members of the school's board of trustees may be citizens of New York. *See* Compl. ¶ 15.[1] It is undisputed that defendants Bill Gibbons, Richard M. Regan, Jr. and Ann Zelesky are each citizens of Massachusetts. *See*

---

[1] This allegation, located in a section of the Complaint entitled "Jurisdiction," is one of several apparently designed to preemptively suggest why *personal* jurisdiction over a Massachusetts college would be appropriate. *See id.* ¶¶ 14-23.

O'Rourke Removal Decl. ¶ 3.  Lastly, Plaintiff does not contest that the $75,000 amount-in-controversy threshold is easily met.[2]

## ARGUMENT

Federal courts have original jurisdiction over actions in which there is complete diversity of citizenship and the matter in controversy exceeds $75,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(a).  Removal is appropriate in any case that could have been originally filed in federal court.  *Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22, 27-28 (2d Cir. 1988) (denying remand and holding that "[r]emoval is appropriate when a state court action could originally have been filed in federal court"); *Vera v. Saks & Co.*, 335 F.3d 109, 113 (2d Cir. 2003) (same); *see also Speter v. Berkeley Coll.*, No. 03 Civ. 1143 (BSJ) (MDF), 2003 WL 22111818, at *1 (S.D.N.Y. Apr. 15, 2003) (applying same principle where the requirements of diversity jurisdiction under 28 U.S.C. § 1332 were satisfied).

Federal courts typically require that diversity exist at the time of commencement of the action and at the time the petition for removal is filed.  *See* 14B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3723 (4th ed. 2010); *Vera*, 335 F.3d

---

[2] The Complaint alleges that Plaintiff was "forced" to "give up her full scholarship [to play basketball at Holy Cross]."  Compl. ¶¶ 72, 77.  The Complaint also claims that Plaintiff left Holy Cross, and accordingly lost her full scholarship, after "approximately two years."  *Id.* ¶ 28.  The value of Plaintiff's full athletic scholarship was $52,800 for the 2011 school, year, and $55,130 for the 2012 school year.  *See* O'Rourke Removal Decl. ¶ 5.  Because Plaintiff seeks to recover the remaining two years of her full athletic scholarship, Plaintiff seeks at least $107,930 in damages.  Plaintiff also seeks to recover her "actual damages" due to the "mental anguish and distress," "emotional distress," "physical pain," and "emotional abuse" that she allegedly suffered while a member of the Holy Cross women's basketball team, as well as punitive damages and attorneys' fees.  *See, e.g.*, Compl. ¶¶ 70-72, 74, 79, 85, 89, 97, 104, 111, 119.  Although Plaintiff does not attach a damages amount to these claims, these additional allegations remove all doubt that the amount at issue in this action exceeds $75,000, exclusive of interest and costs.

at 116 n.2 ("[W]e generally evaluate a defendant's right to remove a case to federal court at the time the removal notice is filed.").

Here, as detailed below, complete diversity of citizenship existed when Plaintiff initiated this action and when Defendants properly removed it to this Court.  And Plaintiff never has contested the fact that the matter in controversy exceeds $75,000, exclusive of interest and costs. Accordingly, the requirements of 28 U.S.C. § 1332(a) are fully satisfied, and Plaintiff's motion to remand should be denied.

## I.     PLAINTIFF'S MOTION TO REMAND SHOULD BE DENIED BECAUSE THERE IS COMPLETE DIVERSITY OF CITIZENSHIP BETWEEN PLAINTIFF AND DEFENDANTS.

Plaintiff has moved to remand this action to state court claiming that, as a trust, Holy Cross is non-diverse because Plaintiff is a citizen of New York and ten of the College's "at least thirty-seven" trustees are alleged to be New York citizens.  Pl.'s Br. at 6.  Plaintiff's remand argument fails for two simple reasons:  (1) the College, as with the three individually-named Defendants[3], is and always has been a citizen of Massachusetts; and (2) the citizenship of the College's trustees is irrelevant because none of the trustees are before this Court as named defendants.

### A.     HOLY CROSS IS A MASSACHUSETTS CORPORATION AND THUS A CITIZEN OF MASSACHUSETTS.

As clearly noted in Defendants' Notice of Removal, and as reiterated to Plaintiff's counsel at this Court's preliminary conference on December 17, 2013, Holy Cross is a

---

[3] Plaintiff does not dispute that the three individually-named Defendants—Bill Gibbons, Richard M. Regan, Jr. and Ann Zelesky—are all citizens of Massachusetts.  *See* O'Rourke Remand Decl. ¶ 7; O'Rourke Removal Decl. ¶ 3.

Massachusetts corporation with its principal place of business in Worcester, Massachusetts.[4] O'Rourke Removal Decl. ¶ 2; Not. of Rem. at 1 n.1. Holy Cross was first incorporated there in March 1865 under the name "the Trustees of the College of the Holy Cross." O'Rourke Remand Decl. ¶ 3. The Articles of Organization specifically indicate that the then-trustees "hereby constituted a body corporate by the name of the Trustees of the College of the Holy Cross . . . and shall be and remain a body corporate of that name forever." *Id.* ¶ 4. Section 3 of the Articles further provide that the corporation "may sue or be sued . . . by the name of the Trustees of the College of the Holy Cross." *Id.*

Moreover, as reflected on the website for the Corporations Division of the Massachusetts Secretary of State, the College's Articles of Organization were amended in 1987 to state, in relevant part, that "[n]o officer or director of the Corporation shall be liable to the *Corporation* or its members for monetary damages for breach of fiduciary duty as an officer or director, notwithstanding any provision of law imposing such liability. . . ." O'Rourke Remand Decl. ¶ 5, Ex. B (emphasis added).

To the extent Plaintiff remains confused by the College's formal appellation—"Trustees of the College of the Holy Cross"—that nomenclature does not purport to identify or create a trust, but rather is consistent with the practice of naming colleges and universities *incorporated* in the eighteenth and nineteenth centuries. Perhaps the earliest example in our country's jurisprudence involved Dartmouth College. *See Trustees of Dartmouth Coll. v. Woodward*, 17 U.S. 518, 552 (1819) ("The charter, or letters-patent, then proceed to create such a corporation,

---

[4] Defendants respectfully submit that the identification of the College's state of incorporation and location in the Notice of Removal satisfies the identification requirements of both the Local Rules for the Southern and Eastern Districts of New York, and of the rules of this Court. *See* S.D.N.Y. Local Civil Rule 81.1; *Individual Rules of Practice in Civil Cases*, Hon. Katherine Polk Failla, U.S.D.J., Rule 6(d) (Revised Nov. 1, 2013).

and to appoint twelve persons to constitute it, by the name of the 'Trustees of Dartmouth

College;' to have perpetual existence, as such corporation, and with . . . all the ordinary powers

of corporations."). In *Trustees of Dartmouth College*, the Supreme Court explained that colleges

are "eleemosynary" corporations, typically founded as a "private charity . . . for the management

of private property, according to the will of the donors; they are private corporations." *Id.* at

562-63.

   This corporate incarnation for colleges and universities has since been routinely

acknowledged by federal courts. *See, e.g., Robb Evans & Assocs. LLC v. Sun Am. Life Ins.*, No.

10 Civ. 5999 (GBD), 2012 WL 488257, at *1 (S.D.N.Y. Feb. 14, 2012) (naming as defendant

"Trustees of Tufts College, a Massachusetts *corporation*"); *Weishaupt v. Boston Coll. and

Trustees of Boston Coll.*, No. 1:11-cv-1122, 2012 WL 1439030, at *1-2 (M.D.N.C. Apr. 24,

2012) (noting that "Trustees of Boston College is the true legal name of the educational

institution," and finding diversity jurisdiction because "Boston College is a citizen of

Massachusetts"); *Trustees of Boston Univ. v. Ligand Pharm., Inc.*, No. Civ.A.02-1312 (SLR),

2003 WL 22501588, at *1 (D. Del. Nov. 3, 2003) (asserting that federal court had diversity

jurisdiction because the "Trustees of Boston University is a Massachusetts not for profit

*corporation* with its principal place of business in Boston, Massachusetts"); *Revell v. Lidov*, No.

3:00-CV-1268-R, 2001 WL 285253, at *2 (N.D. Tex. Mar. 20, 2001) ("Defendant Board of

Trustees of Columbia University of the City of New York (Columbia University) is a not-for-

profit *corporation* engaged in teaching, research, and other academic pursuits."); *Clayton v.

Trustees of Princeton Univ.*, 608 F. Supp. 413, 416 (D.N.J. 1985) ("The Trustees of Princeton

University . . . is an educational *corporation* in the State of New Jersey."); *Tomlinson v. Trustees

of the Univ. of Pa.*, 266 F.2d 569, 570 (3d Cir. 1959) (diversity jurisdiction proper in action

against "The Trustees of the University of Pennsylvania (Trustees), an eleemosynary *corporation of the Commonwealth of Pennsylvania*") (emphasis added in each parenthetical).

Accordingly, as a Massachusetts corporation with its principal place of business in Massachusetts, the Trustees of the College of the Holy Cross is a Massachusetts citizen and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

Plaintiff's reliance on three cases dealing with unincorporated entities and traditional testamentary trusts does not suggest a different result. The U.S. Supreme Court case, *Carden v. Arkoma Associates*, 494 U.S. 185 (1990), involved a limited partnership and the Court determined that, for diversity purposes, a limited partnership's citizenship depends on the individual citizenship of all of its general and limited partners. *Id.* at 195-96. The *Carden* Court expressly contrasted this holding with the jurisdictional dual citizenship test for corporations, place of incorporation plus principal place of business: "While the rule regarding the treatment of corporations as 'citizens' has become firmly established, we have . . . just as firmly resisted extending that treatment to other entities." *Id.* at 189.

The more recent Southern District of New York cases cited by Plaintiff likewise address entities *other than* corporations. *See Mills 2001 LLC v. Synovus Bank*, 921 F. Supp. 2d 219 (S.D.N.Y. 2013) (following *Carden* and holding that the citizenship of a trust that was the lone member of a limited liability company was to be determined by the citizenship of both the trustees and beneficiaries of the trust); *Thales Alenia Space France v. Thermo Funding Co., LLC*, No. 13 Civ. 712 (SAS), 2013 WL 5996148, at *6 (S.D.N.Y. Nov. 12, 2013) (holding that, for diversity purposes, citizenship of a traditional trust is determined by that of the trustee because "[a]ny other holding would be inconsistent with the cases holding that, *because a traditional*

*trust cannot sue or be sued*, the citizenship of the trustees determines citizenship for the purpose of establishing diversity") (emphasis added).

Here, as noted repeatedly, Holy Cross is a Massachusetts corporation that, by its very Articles of Organization "may sue or be sued . . . by the name of the Trustees of the College of the Holy Cross." O'Rourke Remand Decl. ¶ 4. Accordingly, Plaintiff's motion to remand should be denied because Holy Cross is a Massachusetts citizen and there is full diversity of citizenship pursuant to 28 U.S.C. § 1332.

**B.      PLAINTIFF'S MOTION TO REMAND SHOULD BE DENIED BECAUSE HOLY CROSS'S INDIVIDUAL TRUSTEES ARE NOT PARTIES TO THE ACTION.**

Plaintiff blithely asserts that, by naming as Defendants both "College of the Holy Cross" and "The Trustees of the College of the Holy Cross," she was "*plainly intending* to sue all members of the board of trustees as a *group*." Pl.'s Br. at 6 (emphasis added). She claims that although she identified ten individual trustees as alleged New York citizens in the body of the Complaint dealing with personal jurisdiction, *see* Compl. ¶ 15, she elected not to name them in the caption as individual Defendants—along with the 27 other individual trustees of the College—"for the sake of convenience but also to protect the privacy of the individual trustees."[5] Pl.'s Br. at 6. Given the facial implausibility of this post-hoc justification for not naming the trustees as individual parties, Plaintiff's new "plainly intending" standard is a jurisdictional "alley-oop" pass that sails out of bounds, both legally and factually.

Federal Rule 10(a) requires that the "title of the complaint must name all the parties." FED. R. CIV. P. 10(a). Indeed, "[t]his requirement, though seemingly pedestrian, serves the vital

---

[5] Plaintiff does not explain why naming individuals in paragraph 15 of the Complaint is more protective of privacy interests than naming them in the caption. Nor does she extend the same privacy protection courtesies to defendants Gibbons, Regan and Zelesky, each of whom was named in the caption as an individual defendant.

purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008); *see Bauer v. Singh*, No. 3:09-CV-194, 2010 WL 5088126, at *2 (S.D. Ohio Dec. 7, 2010) (party not named in caption of amended complaint "is not a party to the action" (citation omitted)).

And while the Court may permit technical amendments to the caption to correct typographical errors or fix a "misnomer regarding a party," 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1321 (3d ed. 2004), "[t]he caption, pleadings, service of process and other indications of the intent of the pleader, are evidence upon which a district court will decide, in cases of doubt, whether an entity has properly been made a party to a lawsuit." *E.E.O.C. v. Int'l Ass'n of Bridge, Structural and Ornamental Ironworkers, Local 580*, 139 F. Supp. 2d 512, 525 (S.D.N.Y. 2001) (citing *Nationwide Mut. Ins. Co. v. Kaufman*, 896 F. Supp. 104, 109 (E.D.N.Y. 1995)).

None of these considerations suggests that Plaintiff intended to name the individual trustees as defendants, despite having failed to name them in the caption. First, Plaintiff refers to the "Board of Trustees" in the Complaint only insofar as they "are the *individuals who comprise the corporate body constituted to conduct the business* of the College of the Holy Cross." Compl. ¶ 3 (emphasis added). This description is analogous to situations in which individual public officials are *named* in a complaint in their official capacities as opposed to being named for individual conduct that would put them on notice of potential personal liability. As Judge Carter noted in *Prisco v. State of New York*:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the

11

entity. It is *not* a suit against the official personally, for the real party in interest is the entity.

804 F. Supp. 518, 521 (S.D.N.Y. 1992) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).

As noted, beyond this reference to the board of trustees as a group comprising Holy Cross's "corporate body," there is no mention of *any* allegedly tortious acts committed by the individual trustees—other than the "information and belief" allegation that ten of them may live in New York, which is itself not tortious.[6] *Compare Maldonado v. Episcopal Social Servs. Personnel Director*, No. 00 Civ. 4701 (VM), 2000 WL 1789369, at *1 (S.D.N.Y. Dec. 6, 2000) (individual defendant not properly named where "Personnel Director" rather than individual was named in the complaint and individual was not mentioned anywhere in the complaint) *with Ocasio v. Riverbay Corp.*, No. 06 Civ. 6455 (PAC)(KNF), 2007 WL 1771770, at *7 (S.D.N.Y. June 19, 2007) (individual corporate director proper defendant despite not being named in caption of complaint where complaint specifically identified individual as a "defendant" in the "Parties" section of the complaint and plaintiff made factual allegations against the individual defendant in "paragraphs 14-18, 28, and 38 of the complaint").[7]

Perhaps most significantly, none of the individual trustees was served with the Summons and Complaint within the 120-day requirement for effecting service of process set forth in

---

[6] The conclusory, non-specific allegations that all "defendants" were "reckless" fail the specificity requirements of *Twombly* and *Iqbal* and otherwise are insufficiently vague "group pleading" allegations. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 Civ. 2923 (CSH), 1994 WL 88129, at *15 (S.D.N.Y. Mar. 15, 1994) ("Even Rule 8(a) pleading requires plaintiffs to identify the specific defendant charged with committing a particular predicate act, rather than collectivizing a group of defendants as plaintiffs have done here.").

[7] Tellingly, in paragraph 15, where Plaintiff identifies ten trustees as New York residents, they are not referred to as "defendants." *See* Compl. ¶ 15. Rather, Plaintiff states that the singular "[d]efendant The Board of Trustees *includes the following individual members*" as New York citizens. *Id.* (emphasis added).

12

Federal Rule 4(m). *See Ocasio,* 2007 WL 1771770, at *7; FED. R. CIV. P. 4(m).  Accordingly,

they are not even properly before this Court. *See, e.g., Anderson v. Romano,* No. 08 Civ. 00559

(JSR), 2010 WL 4860659, at *1 (S.D.N.Y. Nov. 29, 2010) (holding that "since the plaintiff in

this case failed to serve [the] defendant . . . within 120 days of filing the complaint, the claims

against [that defendant] are hereby dismissed" pursuant to Rule 4(m)); *Spithogianis v. Haj-*

*Darwish,* No. 07 Civ. 4609 (PAC) (JCF), 2008 WL 82188, at *8 (S.D.N.Y. Jan. 7, 2008) (same);

*see generally Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104 (1987) ("Before a

federal court may exercise personal jurisdiction over a defendant, the procedural requirement of

service of summons must be satisfied.").

 Because the individual trustees are not parties to this litigation, they are jurisdictionally

irrelevant and Plaintiff's motion for remand should be denied.

## II. AMENDMENT OF THE COMPLAINT WOULD BE FUTILE.

 Plaintiff's Brief contains a half-hearted request for leave to "amend the Complaint to

name all the trustees individually." Pl.'s Br. at 6.  But her cavalier request is devoid of any

discussion of the standards applicable under 28 U.S.C. § 1447(e).  This is perhaps because, as

detailed below, Plaintiff cannot satisfy those standards.

 Separately, Plaintiff does not even suggest that she could, let alone intends to, add fact-

based allegations sufficient to support a claim against these individuals.  Because such cosmetic

amendment would be futile, the Court should deny Plaintiff's request. *See, e.g., Oneida Indian*

*Nation of N.Y. v. City of Sherrill, N.Y.,* 337 F.3d 139, 168 (2d Cir. 2003) ("A proposed

amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to

Rule 12(b)(6).") *rev'd on other grounds sub nom. City of Sherrill, N.Y. v. Oneida Indian Nation*

*of N.Y.,* 544 U.S. 197 (2005); *Ellis v. Chao,* 336 F.3d 114, 127 (2d Cir. 2003) ("It is well

established that leave to amend a complaint need not be granted when amendment would be futile.").

## A. JOINDER SHOULD BE DENIED UNDER 28 U.S.C. § 1447(e).

As set forth in 28 U.S.C. § 1447(e),[8] "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  Although the Court may exercise its discretion, "[d]istrict courts in this Circuit . . . permit a joinder which destroys diversity only when consistent with principles of fundamental fairness as appraised using the following factors: (1) any delay, as well as the reason for delay, in seeking joinder; (2) resulting prejudice to defendant; (3) likelihood of multiple litigation; and (4) plaintiff's motivation for the amendment."  *Nazario v. Deere & Co.*, 295 F. Supp. 2d 360, 363 (S.D.N.Y. 2003) (collecting cases and denying motion to join non-diverse defendants and remand to state court).  Here, Plaintiff does not contend that these factors weigh in her favor, and they do not.

First, Plaintiff has yet to amend her Complaint, or properly seek leave to amend, to add the diversity-destroying individuals.  Instead, Plaintiff's Brief off-handedly mentions that she might do so in the future, with no explanation for the ongoing delay.  Pl.'s Br. at 6.  In these circumstances, the first factor in the Section 1447(e) analysis weighs decidedly against permitting joinder at some future, unspecified time.

With respect to the second factor, the diverse (existing) Defendants have an interest in

---

[8] Because joinder of individual trustees should be denied under 28 U.S.C. § 1447(e), which is the governing statutory provision regarding post-removal joinder, Defendants do not herein argue that joinder would be impermissible under Federal Rule of Civil Procedure 20(a)(2).  Plaintiff's Notice of Motion indicates that her motion to remand is made under Federal Rule of Civil Procedure 12(h)(3) and 28 U.S.C. § 1447(c).  ECF Dkt. No. 16.  By its terms, Rule 12 applies to "Defenses and Objections."  The "just costs and any actual expenses" provisions of Section 1447(c) are addressed in Section III *infra*.

14

defending this case before this Court, and they properly removed the action from state court based on the Complaint's substantive claims as originally pled. *See Nazario*, 295 F. Supp. 2d at 364. Although the case is not procedurally advanced, Defendants' pre-motion letter, requesting leave to file a comprehensive motion to dismiss, was filed months ago, ECF Dkt. No. 9, and remanding the action will delay its resolution. As such, this factor is, at best, neutral.

Next, multiple litigations are highly unlikely. For the reasons described in Section II.B *infra*, if the Court denies joinder of the individual trustees, Plaintiff is highly unlikely to commence a separate action against them in state court because she has no realistic prospect of meaningful recovery against them, including as against the 27 trustees she has never identified, but who presumably are beyond the personal jurisdiction of any New York state court. In all events, the question could have been avoided entirely had Plaintiff pled fact-based allegations against—or even identified—all of the individuals whom she may later seek to join. Accordingly, this factor also weighs against permitting joinder under 28 U.S.C. § 1447(e).

Concerning the critical final element, it is well-established that the desire to destroy federal diversity jurisdiction is an impermissible motive. *See, e.g., Deutchman v. Express Scripts, Inc.*, No. 07-CV-3539 (DLI) (RER), 2008 WL 3538593, at *4 (E.D.N.Y. Aug. 11, 2008) (quoting *Nazario*, 295 F. Supp. 2d at 364); *see also Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998) (affirming district court's denial of motion to remand and grant of motion to dismiss non-diverse defendant, noting that "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy").

Here, the only *mention* of any individual trustees is in one paragraph in the section of the Complaint entitled "Jurisdiction." Compl. ¶ 15. That lone paragraph alleges—solely "upon

15

information and belief"—that these individuals (a small subset of the board of trustees) are citizens of New York. *Id.* There is no hint of a viable claim against any of them in the Complaint and Plaintiff has never—in her correspondence with the Court, argument before the Court, or in her briefing—shown that there is. *See Parson v. Home Depot USA, Inc.*, CIV. A. No. 13-4817, 2013 WL 6587316, at * 3 (D.N.J. Dec. 13, 2013) ("The lack of new facts leans toward the purpose of defeating diversity."); *Carrasco v. C.H. Robinson Worldwide, Inc.*, No. 1:13-cv-1438-LJO-SAB, 2013 WL 6198944, at *3 (E.D. Cal. Nov. 27, 2013) ("[T]he obvious inference from the timing of the joinder suggests that these claims were added to defeat jurisdiction."). The complete lack of allegations credibly directed at any individual trustee is evidence that Plaintiff's exclusive aim is to eradicate federal subject-matter jurisdiction.[9]

Where, as here, a plaintiff's primary purpose in seeking joinder is to deprive the Court of its diversity jurisdiction, the "plaintiff's motivation" factor in the 1447(e) analysis "weighs heavily" against allowing joinder. *Deutchman*, 2008 WL 3538593, at *4-5 (finding that plaintiffs' "sole purpose" in seeking to join non-diverse defendant was to "frustrate the defendants and to deprive the court of jurisdiction over" the action).

**B. THE PROPOSED AMENDMENT COULD NOT WITHSTAND A MOTION TO DISMISS.**

To survive dismissal under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that complaint must allege sufficient facts to show that claims are "plausible"

---

[9] While courts typically do not consider the doctrine of fraudulent joinder when a non-diverse party is added after removal, its analysis—which involves the relationship of the non-diverse defendants to the alleged wrongdoing—is "highly germane" to Plaintiff's motive and as a consideration in the Section 1447(e) analysis. *See, e.g.*, *Hosein v. CDL W. 45th St., LLC*, No. 12 Civ. 06903 (LGS), 2013 WL 4780051, at *6 (S.D.N.Y. June 12, 2013) ("That analysis dictates that federal diversity jurisdiction should not be destroyed by non-diverse defendants who have no real connection with the controversy and no real prospect of liability.").

and not merely "conceivable"). A pleading does not state a plausible claim to relief by making "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint likewise fails if it alleges no "more than a sheer possibility that a defendant has acted unlawfully," or states only facts that are "merely consistent with a defendant's liability." *Id.*

As mentioned above, Plaintiff avers that her potential amendment to the Complaint would only superficially "name all the trustees individually," Pl.'s Br. at 6, and she has never submitted a proposed amended complaint. Nor has Plaintiff ever indicated that she will, or even could, assert fact-based allegations concerning those individuals sufficient to withstand a motion to dismiss under Rule 12(b)(6). Accordingly, there is no basis upon which the Court could infer that an amended pleading here would encompass anything more than the perfunctory change to the caption suggested in Plaintiff's Brief. *See id.*

Even if Plaintiff refocused her allegations on the individual trustees in order to destroy diversity, she would run headlong into the Massachusetts statutory protections for uncompensated trustees or directors of non-profit educational institutions, making any purported amendment implausible and thus futile. In cases where federal subject matter is premised upon diversity of citizenship, courts apply the choice-of-law analysis of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331 (2d Cir. 2005). In determining which substantive state law applies in a tort action where the claims and actors may be located in multiple jurisdictions, New York courts must first determine whether there is a conflict between the laws of the various states and, if so, whether the conflicting law involves the regulation of conduct or in allocating loss between

17

the relevant parties.[10]

In the former situation, a New York court would apply the law of the state where the tort occurred. *See Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189, 197-98 (1985). In the latter, "loss allocation" situation, New York courts apply the interest analysis established by the Court of Appeals in *Neumeier v. Kuehner*, 31 N.Y.2d 121, 127-29 (1972). *See Lamensdorf v. New York Univ.*, No. 10 Civ. 3462 (JSR), 2010 WL 4967824, at *1 (S.D.N.Y. Nov. 30, 2010). Under the *Neumeier* analysis, the law of the situs of the tort applies "unless it appears that 'displacing [the] normally applicable rule will advance the relevant substantive law purposes' of the jurisdictions involved." *Id.* (quoting *Neumeier*, 31 N.Y.2d at 129).

Charitable immunity statutes—protecting charities and/or volunteer trustees or directors of non-profits from personal liability—are considered "loss allocation" rules and are analyzed according to *Neumeier*. *See Schultz*, 65 N.Y.2d 189, 197-98 (1985) (New Jersey statute giving statutory immunity to charities is a "loss allocation" rule as opposed to a law regulating conduct and would apply to preclude negligent supervision claims against New Jersey and Ohio-domiciled non-profit entities brought by New Jersey-domiciled victims of alleged sexual abuse perpetrated in both New York and New Jersey); *Gilbert v. Seton Hall Univ.*, 332 F.3d 105, 109 (2d Cir. 2003) (same). Accordingly, both the New York Court of Appeals and the Second Circuit have applied the *Neumeier* analysis and concluded that, notwithstanding that the tortious conduct allegedly occurred in New York, applying New Jersey's charitable immunity statute to

---

[10] We have not located any cases that have scrutinized the comparative difference between the Massachusetts non-profit statute, which immunizes trustees from all but "willful or wanton misconduct" and New York's statute, which would not extend charitable immunity to volunteer directors for either intentional or grossly negligent conduct. *See* MASS. GEN. LAWS, ch. 231, § 85K (2012); N.Y. NOT-FOR-PROFIT CORP. LAW § 720-a (2013). It stands to reason, however, that New York's statute is less protective of volunteer directors than Massachusetts. Therefore, Plaintiff's pleading requirements for the individual trustees are fundamentally implausible under *Iqbal* and *Twombly*.

protect New Jersey non-profit defendants advanced the "relevant substantive law purposes" of New Jersey. *See Schultz*, 65 N.Y.2d at 199-202 (applying charitable immunity law of parties' domicile, New Jersey, rather than situs of tort, New York, because applying New Jersey law "would further that State's interest in enforcing the decision of its domiciliaries to accept the burdens as well as the benefits of that State's loss-distribution tort rules and its interest in promoting the continuation and expansion of defendant's charitable activities in that State"); *Gilbert*, 332 F.3d at 109-11 (concluding that New Jersey charitable immunity statute applied to preclude negligence claim brought by student injured in rugby game played in New York and specifically noting that "New Jersey has an interest in ensuring that its universities can continue to attract out-of-state students and provide them a low cost educational service without being exposed to unpredictable liability *vis à vis* those students").[11]

Here, all of the aforesaid analytical arrows point conclusively to application of the Massachusetts statute. While Plaintiff alleges that she is a New York citizen, the vast majority of her contacts with Holy Cross and the individual defendants occurred while she was attending college at Holy Cross in Massachusetts and the alleged tortious acts presumably occurred there. Certainly, she does not allege facts to show that any torts occurred in New York. Accordingly, under *Edwards*, *Schultz* and *Gilbert*, the Massachusetts charitable immunity statute should apply to any allegations against the individual Holy Cross trustees.

---

[11] More recently, in *Edwards v. Erie Coach Lines Co.*, 17 N.Y.3d 306, 321-22 (2011), the Court of Appeals suggested that the most significant factor in determining whether to apply the foreign substantive law is the degree of contacts that the parties have in the foreign jurisdiction. *See Galeotti v. Cianbo Corp.*, No. 5:12-cv-00900 (MAD) (TWD), 2013 WL 3207312, at*12-13 (N.D.N.Y. June 24, 2013) (noting that, in light of *Edwards*, under both *Schultz* and *Gilbert*, the key factor to consider was the number of contacts between plaintiffs and defendants in New Jersey and the relatively few contacts in New York). Here, Plaintiff does not allege facts showing that any tortious activity occurred in New York. Indeed, Plaintiff's purported New York domicile is the most specific New York contact alleged in the Complaint.

19

Given the paucity of allegations against the trustees in the current Complaint, therefore, Plaintiff could not now amend the Complaint to state a plausible claim for relief against these individuals, given that Massachusetts statutory law protects uncompensated directors and trustees for non-profit educational institutions from all but "willful or wanton misconduct."[12] Under this rubric of statutory immunity, therefore, allegations of negligent, or even grossly negligent or reckless, conduct by individual trustees would not be legally cognizable.

At most, the gravamen of Plaintiff's allegations against the trustees sounds in negligent supervision of those who supervised her coach.  Accordingly, Plaintiff cannot, within the confines of Rules 11, 15 or 20, amend her pleading to assert fact-based claims of "willful or wanton misconduct" against individuals with no real connection to the purported wrongdoing.  *See Pampillonia*, 138 F.3d at 460-61.  Because allowing amendment would be an exercise in futility, Plaintiff's request should to amend should be denied.

---

[12] Massachusetts General Laws, Chapter 231, Section 85K, titled "Limitation of tort liability of certain charitable organizations; liability of directors, officers or trustees of educational institutions," provides in relevant part:

> No person who serves as a director, officer or trustee of an educational institution which is, or at the time the cause of action arose was, a charitable organization, qualified as a tax-exempt organization under 26 USC 501(c)(3) and who is not compensated for such services, except for reimbursement of out of pocket expenses, shall be liable solely by reason of such services as a director, officer or trustee for any act or omission resulting in damage or injury to another, if such person was acting in good faith and within the scope of his official functions and duties, unless such damage or injury was caused by willful or wanton misconduct.

As with the New Jersey charitable immunity statute discussed above, the Massachusetts Legislature extended the statute specifically to protect persons who serve as volunteer directors, officers or trustees of educational institutions in order to "encourage a commitment of time" from these individuals. *Giardi v. Dunning*, 563 F. Supp. 2d 305, 310 (D. Mass. 2008).

20

### III.     PLAINTIFF'S REQUEST FOR FEES IS BASELESS.

Plaintiff's request for the costs, or the attorneys' fees, associated with making this motion is meritless. *See* Pl.'s Br. at 7. As a threshold matter, Plaintiff cannot recover costs and fees because this case was properly removed, and there is no basis for remand. *See* 28 U.S.C. § 1447(c) ("An order *remanding the case* may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.") (emphasis added); *see also* Section I, *supra*. Plaintiff's fee application therefore fails.

But even if Plaintiff were entitled to remand—and she is not—there still would be no basis to award any of the costs or fees associated with this motion. As the Supreme Court has held, "courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Plaintiff's two wholly conclusory arguments come nowhere close to meeting this high standard.

First, Plaintiff claims that it is "abundantly clear" from the Complaint that this Court lacks subject matter jurisdiction over this action. Pl.'s Br. at 7. That argument is belied by the absence of any purportedly non-diverse defendants named in, or served with, the Complaint. In addition, as noted above, the trustees could not properly be made defendants in this action. Even were that not so, in no way does Defendants' argument "lack[] an objectively reasonable basis." *See, e.g.*, *DiscoveryLogix, LLC v. Haystac, LLC*, 13 Civ. 4025 (PKC), 2013 WL 4806939, at *3 (S.D.N.Y. Sept. 9, 2013) (denying application for fees under 28 U.S.C. § 1447(c), and noting that "[a]lthough the Court ultimately disagrees that this allegation, taken in context, pleads a basis for federal jurisdiction, it cannot say that defendant's position was objectively unreasonable").

Second, Plaintiff makes the nonsensical argument that a fee award is appropriate because "the defendants know who their trustees are and their citizenship." Pl.'s Br. at 7. This is an analytical non sequitur since the trustees are not defendants. Defendants' initial removal therefore was not "objectively unreasonable," even if subsequently undone by a judicially approved post-removal joinder of the trustees pursuant to 28 U.S.C. § 1447(e). *See, e.g., Norcast S.àr.l. v. Castle Harlan, Inc.*, 12 Civ. 4973 (PAC), 2014 WL 43492, at *9 (S.D.N.Y. Jan. 6, 2014) (denying fee application under 28 U.S.C. §1447(c)); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 1:00-1898 (SAS), 2006 WL 1004725, at *7 (S.D.N.Y. Apr. 17, 2006) (denying fee application under 28 U.S.C. § 1447(c) where "[d]efendants raised colorable issues of law").

## IV.    THE COURT SHOULD AWARD FEES TO DEFENDANTS.

To the extent the Court determines that an award of attorneys' fees and costs is warranted here, it is Plaintiff who should be required to pay for the fees Defendants have incurred in opposing this meritless remand motion. Such fees are warranted under either the provisions of the United States Code or this Court's inherent power to award attorneys' fees. Where an attorney "so multiplies the proceedings in any case unreasonably and vexatiously[, she] may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Courts also have the inherent power to award fees when they determine that a party or attorney "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Sierra Club v. U.S. Army Corps. of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985). A fee award is proper under either standard where "(1) the offending party's claims were entirely without color, and (2) the claims were brought in bad

22

faith—that is, motivated by improper purposes such as harassment or delay." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (internal quotation marks omitted).

First, Plaintiff's motion is not colorable. A claim "lacks a colorable basis when it is utterly devoid of a legal or factual basis." *Reichmann v. Neumann*, 553 F. Supp. 2d 307, 320 (S.D.N.Y. 2008). As detailed above, Plaintiff claims that Holy Cross is a trust, despite being shown repeatedly that it is not. And the threadbare Complaint does not adequately allege that the College's trustees—individually or collectively—are proper parties. These individuals were never served with process, and the few factual allegations against the group are entirely inadequate. These facts show that what Plaintiff "plainly intends" is to include the trustees as parties solely to destroy diversity. Despite Defendants' good faith efforts to obviate this motion to remand, Plaintiff persisted down this path and filed a motion without any legal or factual support. Accordingly, this motion is not colorable, and an award of attorneys' fees to Defendants is warranted.

Second, Plaintiff's pursuit of a knowingly baseless motion reflects bad faith. Bad faith exists where a party takes actions that "are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Marathon Projects Ltd. v. Creative Designs Int'l, Ltd.*, No. 10 CV 2396 (RPP), 2011 WL 1002424, at *7 (S.D.N.Y. Mar. 16, 2011) (internal quotation marks omitted).[13] Plaintiff's decision to pursue remand in the face of substantial, undisputed and indisputable evidence, both in correspondence and before this Court, meets that standard.

---

[13] In addition to the substantive requirement of "bad faith," courts have imposed a procedural requirement of notice and an opportunity to be heard. *See Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009). That procedural requirement may be fulfilled by providing an opportunity to respond through briefing or oral argument. *Id.* (citing *60 E. 80th St. Equities, Inc. v. Sapir (In re 60 E. 80th St. Equities, Inc.)*, 218 F.3d 109, 115 (2d Cir. 2000)).

Courts have awarded attorneys' fees to parties opposing similar applications made after counsel became aware that a motion was entirely meritless. *See, e.g.*, *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99 Civ. 10175 (JSM), 2001 WL 1154669, at *3 (S.D.N.Y. Oct. 1, 2001) *aff'd as modified*, 317 F.3d 209 (2d Cir. 2003) (granting motion for attorneys' fees pursuant to 28 U.S.C. § 1927 because party continued to litigate issue "after it became apparent that there was no good faith basis for [motion]").  Given the threadbare and conclusory allegations that make up the Complaint, this motion appears to have been filed to delay Defendants' dispositive motion to dismiss and to drive up Defendants' litigation costs in the hopes of forcing an early settlement of this case.  These tactics are improper and warrant an award to Defendants of the costs and fees incurred in opposing this motion.

## CONCLUSION

For the reasons set forth above, the Motion to Remand should be denied in its entirety, and this Court should award Defendants the fees incurred in opposing that motion.

Dated: February 14, 2014
    New York, New York

Respectfully submitted,

**VENABLE LLP**

By: _____
      Michael J. Volpe
      Edmund M. O'Toole
      Michael C. Hartmere
      Adam G. Possidente
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
(212) 307-5500 (tel.)
(212) 307-5598 (fax)

*Counsel for Defendants*

24